IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION
_____

DONALD BURGER and THOMAS BRADEN
d/b/a DIVERSIFIED FINISHING SYSTEMS,

          **Plaintiffs,**

v.                                                                      No. 1:17-cv-1063-STA-egb

ENGINEERED PAINT APPLICATIONS, LLC,
ERNEST MANCILLA, and FABIAN CARDENAS

          **Defendants.**
_____

**ORDER GRANTING DEFENDANTS' MOTION TO SET ASIDE DEFAULT
JUDGMENT**
_____

Before the Court is Defendants Ernest Mancilla and Fabian Cardenas's Motion to Set Aside Default Judgment (ECF No. 19) filed on June 9, 2017. Plaintiffs Donald Burger and Thomas Braden d/b/a Diversified Finishing Systems have responded in opposition, and Defendants with leave of court have filed a reply. The parties having fully briefed the issues, Defendants' Motion is now ripe for determination. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

Plaintiffs filed a Complaint on April 11, 2017, seeking sales commissions allegedly owed under an agreement between the parties. Plaintiffs allege that Donald Burger is a citizen of the state of Texas and that Thomas Braden is a citizen of Mississippi. Both Plaintiffs do business as Diversified Finishing Systems ("Diversified"). Defendants Ernest Mancilla and Fabian Cardenas are citizens of California and the sole members of Engineered Paint

1

Applications, LLC ("EPA"), a California limited liability company. According to the Complaint, Diversified and EPA have a long-standing business relationship where Diversified acts as a sales consultant for EPA and in return receives a 10 percent commission from EPA on sales. Plaintiffs allege that Diversified is owed commissions on two such contracts from 2015. First, Diversified completed a sale for a finishing system to Rough Country, LLC in Dyersburg, Tennessee ("the Rough Country contract"). Per the agreement between Diversified and EPA, EPA owed Diversified a commission of $86,650 on the Rough Country contract but received only two payments from EPA for $8,665 and $25,995. In a second transaction, Diversified assisted in the sale of a finishing system to Tecnico Corporation. Although Diversified agreed to accept a reduced, flat commission of $50,000, EPA has failed to pay Diversified its commission. Based on these allegations, Plaintiffs allege claims for breach of contract, unjust enrichment, and quantum meruit.

On the same day Plaintiffs filed their Complaint, Plaintiffs caused summons to issue as to EPA, Mancilla, and Cardenas. On May 12, 2017, Plaintiffs filed affidavits of service showing that they had served Cardenas on April 21, 2017, and Defendant Mancilla on April 23, 2017. To date Plaintiffs have not shown that they perfected service on EPA, though the Complaint alleges Mancilla and Cardenas are the sole "owners" of the LLC. On May 26, 2017, Plaintiffs filed separate motions for entry of default as to Mancilla and Cardenas, and the same day the Clerk of Court entered default. On May 30, 2017, Plaintiffs filed and the Clerk granted separate motions for default judgment as to Mancilla and Cardenas.

On June 7, 2017, counsel filed a notice of appearance on behalf of EPA, Mancilla, and Cardenas, and filed the Motion to Set Aside the Default Judgments against Mancilla and Cardenas. Defendants argue that the Court should set aside the default judgments against

2

Mancilla and Cardenas under Federal Rules of Civil Procedure 55(c), 60(b)(1), and 60(b)(6). For cause Mancilla and Cardenas assert that they were in active settlement negotiations with counsel for Plaintiffs when Plaintiffs obtained entry of default and the default judgments against them. Defendants have submitted affidavits from Cardenas and from their attorney Lewis Cobb.

The affidavits show that after receiving service of process, Mancilla and Cardenas acted *pro se* and first spoke with counsel for Plaintiffs on May 12, 2017. At that time counsel for Plaintiffs agreed to allow Mancilla and Cardenas until May 22, 2017, in which to file a responsive pleading and Mancilla and Cardenas agreed to make a settlement offer. Mancilla and Cardenas made their offer by email on May 22, 2017, and Plaintiffs rejected the offer later the same day. In communicating Plaintiffs' decision to decline the offer, counsel for Plaintiffs requested that Mancilla and Cardenas notify him if they intended to make another offer or if they had any questions. On May 24, 2017, Mancilla and Cardenas emailed counsel for Plaintiffs a second offer and never heard from him. Two days later on May 26, 2017, the Friday before the Memorial Day weekend, Plaintiffs sought and were granted entry of default as to Mancilla and Cardenas. The same day, May 26, 2017, Mr. Cobb, who is now counsel of record for all Defendants, called and left a voicemail for counsel for Plaintiffs. Mr. Cobb advised counsel for Plaintiffs that Defendants had contacted him about representing them in this matter, and Mr. Cobb was calling to discuss the status of the case. Plaintiffs filed their motions for default judgment on May 30, 2017, the Tuesday after the Memorial Day holiday. Counsel for Plaintiffs returned Mr. Cobb's call only after the Clerk had granted Plaintiffs default judgments against Mancilla and Cardenas.

Defendants argue that all of the relevant factors are met to aside the default judgments.

Plaintiffs will not be prejudiced, and Defendants have not acted culpably. Defendants argue that Plaintiffs were willing to negotiate with Mancilla and Cardenas as long as they were acting *pro se* and only moved for entry of default and default judgment after Mancilla and Cardenas attempted to retain counsel. Defendants argue that Plaintiffs acted without responding to the second offer tendered by Mancilla and Cardenas or notifying them that the negotiations were complete or warning them about the defaults or returning Mr. Cobb's phone call. Defendants also argue they have meritorious defenses. The default judgments included an award of attorney's fees in the amount of $35,696.50 against both Mancilla and Cardenas. According to Defendants, the alleged agreement between Diversified and EPA was an oral contract and did not provide for attorney's fees. Defendants further suggest that EPA is not a proper party to the action. EPA was a brand name used by Relmex, Inc., a California corporation owned by Cardenas. These factors weigh in favor of allowing the case to proceed on its merits. As such, the Court should set aside the default judgments and entries of default.

In their response in opposition, Plaintiffs adduce a number of additional background facts about the parties' course of dealing. When Cardenas first contacted counsel for Plaintiffs, Plaintiffs agreed to negotiate with Defendants until May 22, 2017, and give Defendants until that time to respond to the Complaint without seeking a default. Cardenas agreed to make an offer of settlement by May 18, 2017. Instead Cardenas emailed counsel for Plaintiffs with an offer at 4:30 p.m. on May 22, 2017, the deadline for Defendants to file an answer. Defendants never requested more time to file an answer. On May 26, 2017, counsel for Plaintiffs prepared Plaintiffs' motions for entry of default and left them with an associate to be filed with the Court. Counsel for Plaintiffs returned to work on May 30, 2017, and attempted to return Mr. Cobb's call. Although counsel for Plaintiffs did not reach Mr. Cobb,

4

Plaintiffs proceeded to file their motions for default judgment as to Mancilla and Cardenas on May 30, 2017. Counsel for Plaintiffs eventually spoke with Mr. Cobb's associate, Mr. Hardegree, on May 31, 2017. Mr. Hardegree informed counsel for Plaintiffs that his firm had been contacted by Defendants but had not yet been retained. Before taking any action to enforce the default judgments, counsel for Plaintiffs attempted to contact Mr. Hardegree again on June 7, 2017, but was unable to reach him.

Plaintiffs argue that Defendants have not shown why the Court should set aside the default judgments under Rule 60(b)(1) or Rule 60(b)(6). Mancilla and Cardenas cannot demonstrate surprise, mistake, or excusable neglect. Both Defendants had notice from the summons as well as from Plaintiffs' agreement not to file a motion for default that they had an obligation to enter an appearance and plead. Plaintiffs' certificate of service shows that they served Mancilla and Cardenas with the motions for entry of default. Defendants cannot show then why relief is warranted under Rule 60(b)(1) or Rule 60(b)(6).

Plaintiffs also argue that Defendants cannot satisfy the lesser good cause for setting aside the default judgments. Defendants showed reckless disregard for the consequences of their failure to request a further extension of time to answer the Complaint. The time for Defendants to file an answer passed, and Defendants could not simply rely on the possibility of settlement discussion to avoid their responsibilities under the Federal Rules of Civil Procedure. Nor have Defendants shown they have meritorious defenses. The contract at issue was with EPA, not Relmex, Inc. or any other entity. Plaintiffs assert that all of their dealings have been with EPA and Mancilla and Cardenas. The California Franchise and Tax Board suspended Relmex, Inc. from doing business in the state on June 1, 2015. As for prejudice to Plaintiffs, the status of Defendants' business organizations calls into doubt how much relevant

information Plaintiffs will be able to obtain from Defendants in discovery. Finally, Plaintiffs contend that the default judgment's award of attorney's fees was proper. The Complaint prayed for an award of attorney's fees, and the amount of fees was for a sum certain. For all of these reasons, Plaintiffs ask the Court to deny the Motion to Set Aside the Default Judgments.

Defendants have filed a reply. Defendants argue that they have satisfied Rule 60(b)(1) by showing that the entry of the default judgment constitutes surprise. Defendants were engaged in ongoing negotiations with Plaintiffs. The Sixth Circuit has held that such conduct evidences intent to defend and establishes good cause for setting aside a default judgment. Additionally, Plaintiffs' failure to give Defendants notice of their intent to seek default makes the default judgment voidable for purposes of Rule 60(b)(6). Defendants have also shown that their default was not culpable. Defendants have acted promptly to move to set aside the default judgment and have not otherwise ignored the orders of the Court. With respect to their defenses on the merits, Defendants argue that they need only show that they have a defense good at law, not that they will prevail. Defendants argue for the first time in their reply that they are entitled to relief from the default judgments under Rule 60(b)(3), contending that Plaintiffs misrepresented to the Court the nature of the contract and the grounds for an award of attorney's fees.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(1) requires a Clerk of Court to enter judgment against "a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person" as long as "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). A district court "may set aside an

6

entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). The parties have assumed, perhaps with good reason, that the standards for granting relief from a final judgment under Rule 60(b) apply in this case. The Sixth Circuit has long construed Rule 55(c) to allow a district court to vacate a default judgment only if the defaulting party can "satisfy[] the stricter standards applied to final, appealable orders under Fed. R. Civ. P. 60(b)." *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990).

But Rule 55(c) was amended in 2015 to insert the word "final" just before "default judgment." According to the Advisory Committee Notes, the purpose of the 2015 amendment was "to make plain the interplay between Rules 54(b), 55(c), and 60(b)." Fed. R. Civ. P. 55(c), Adv. Committee Notes to 2015 amendment. Specifically, "[t]he demanding standards set by Rule 60(b) apply only in seeking relief from a final judgment." *Id.* For purposes of the amended version of Rule 55(c), "[a] default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b)." *Id.*; *see also* 10A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2692 (4th ed.).

Applying these principles to the case at bar, the Court holds that "the demanding standards" of Rule 60(b) do not apply to Defendants' Motion to Set Aside Default Judgments. The default judgments against Mancilla and Cardenas are not final judgments because the default judgments have not determined "all of the claims among all parties" and the Court has not directed entry of a final judgment under Rule 54(b). *Id.* The Complaint alleges claims against EPA as well as Mancilla and Cardenas. In fact, the Complaint arguably alleges the breach of contract claims against only EPA. Plaintiffs allege that EPA, and not Mancilla or Cardenas, was a party to the Rough Country contract and the Tecnico contract. However, at

this stage of the proceedings, Plaintiffs have not filed proof of service as to EPA, much less obtained final and complete relief against EPA. It is true that the Complaint alleges that Mancilla and Cardenas are "owners" of EPA, a California LLC. Technically speaking, California LLCs have "'members' who own membership interests." *W. Surety Co. v. La Cumbre Office Partners, LLC*, 213 Cal. Rptr. 3d 460, 464, 8 Cal. App. 5th 125, 131 (Cal. Ct. App. 2 Dist. 2017). Perhaps more importantly, under California law, an LLC "has a legal existence separate from its members." *Id.* The fact then that Plaintiffs have obtained default judgments against Mancilla and Cardenas does not mean they have obtained relief against EPA. Under the circumstances, it cannot be said then that the default judgments against Mancilla and Cardenas constitute final judgments disposing of all of Plaintiffs' claims.

Neither the Sixth Circuit nor any other Circuit Court of Appeals has addressed the impact of the 2015 amendment to Rule 55(c). Nevertheless, the Sixth Circuit has dismissed an appeal from a default judgment, holding that the judgment was not a final, appealable order so long as "pending parties and claims in the litigation before the district court" remained. *DirecTV, Inc. v. Turk*, 282 F. App'x 382, 383 (6th Cir. 2008). Although *Turk* never addressed whether Rule 60(b) supplied the correct standard for relief from all default judgments, *Turk* supports the proposition that a default judgment as to something fewer than all of the claims against all of the parties to an action is not a final judgment for purposes of Rule 60(b). In that sense, the 2015 amendment to Rule 55(c) is consistent with the Sixth Circuit's approach to the pre-2015 version of Rule 55(c).

Having concluded that Mancilla and Cardenas need not satisfy the higher requirements of Rule 60(b) in order to obtain relief from the default judgments against them, the question then is what rule establishes the correct standard of review? Rule 54(b) provides that an order

8

"that adjudicates fewer than all the claims . . . of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). And the Advisory Committee Notes to the 2015 amendment of Rule 55(c) state that "[u]ntil final judgment is entered, Rule 54(b) allows revision of the default judgment [deciding fewer than all of the claims against all of the parties] at any time." Fed. R. Civ. P. 55(c), Adv. Committee Notes to 2015 amendment. Therefore, The Court holds that Rule 54(b) provides the correct standard of review for Defendants' Motion to Set Aside the Default Judgments.

Rule 54(b) itself does not spell out what showings or grounds will support a request for revision. Local Rule of Court 7.3 addresses motions for revision of interlocutory orders and states that "any party may move pursuant to Fed. R. Civ. P. 54(b), for the revision of any interlocutory order" before the entry of judgment. L.R. 7.3(a); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). Local Rule 7.3(b) enumerates the grounds that will support revision and requires the moving party to specifically show

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

L.R. 7.3(b).

If Mancilla and Cardenas can show why the Court should revise the orders granting

9

Plaintiffs' motions for default judgment, the Court must then determine whether Mancilla and Cardenas have shown good cause to set aside the entries of default against them. Rule 55(c) of the Federal Rules of Civil Procedure allows a district court to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). To determine whether good cause exists, courts weigh three equitable factors: (1) whether the defendant's culpable conduct led to the entry of default; (2) whether the defendant has a meritorious claim or defense; and (3) whether the plaintiff would be prejudiced if default was set aside. *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983) (holding that "the three factors [] should be applied in both situations," that is, for a Rule 60(b) motion to set aside default judgment and for a Rule 55(c) motion to set aside entry of default).

## ANALYSIS

### I. Relief from Default Judgment

The Court holds that relief from the default judgments against Mancilla and Cardenas is warranted for a number of reasons. First, Mancilla and Cardenas have shown an entitlement to relief under Rule 54(b). Mancilla and Cardenas were engaged in active negotiations with Plaintiffs at the time that Plaintiffs obtained entries of default and then default judgments against Mancilla and Cardenas. The timeline of critical events was as follows: on Monday, May 22, Mancilla and Cardenas made Plaintiffs an offer of settlement. Plaintiffs declined to accept. In rejecting the offer later that day, counsel for Plaintiffs asked Mancilla and Cardenas to notify him if they intended to make a second offer, reasonably implying that Plaintiffs were open to continued negotiations. On Wednesday, May 24, Mancilla and Cardenas extended a second offer. For reasons that are not clear to the Court,

counsel for Plaintiffs never responded to the offer or notified Mancilla and Cardenas that Plaintiffs were ending the negotiations. On Friday, May 26, Plaintiffs sought entry of default. The same day Mr. Cobb telephoned counsel for Plaintiffs and left a message, informing counsel about Mr. Cobb's potential involvement in the case and requesting an update on the status of the case from Plaintiffs' perspective. On Tuesday, May 30, before making contact with Mr. Cobb or returning his call, counsel for Plaintiffs filed motions for default judgment.

The facts presented do not fit neatly into any of the showings required for revision of an interlocutory order in Local Rule 7.3(b). Nevertheless, the Court finds that these facts amount to "a material difference in fact . . . from that which was presented to the Court before entry of the interlocutory order for which revision is sought." Local R. 7.3(b). Upon the entry of default and the filing of Plaintiffs' motion for default judgment, there was nothing in the record to suggest that Mancilla and Cardenas's failure to appear was the result of anything other than their indifference to Plaintiffs' claims. Both had been served more than a month before the Clerk granted the default judgments, and the affidavit filed by counsel for Plaintiffs (ECF No. 9-1, 10-1) averred that both Defendants had received an extension of time to file a responsive pleading but still failed to appear. "A default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." 10A Wright & Miller, Fed. Practice & Proc. § 2681 (3d ed. 1998) (citing *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). In their Motion, Mancilla and Cardenas have now shown that while initially acting *pro se*, they were attempted to engage in negotiations with Plaintiffs when Plaintiffs sought entry of default and default judgment.

11

Under the specific facts of this case, the Court holds that Mancilla and Cardenas are entitled to revision of the default judgment.

Second, the Court holds that Mancilla and Cardenas were entitled to notice of Plaintiffs' motion for default judgment. Generally, Federal Rule of Civil Procedure 5(a)(2) does not require service of a motion or paper on a party in default. Fed. R. Civ. P. 5(a)(2). But Rule 55(b)(2) requires a party to apply to the district court for a default judgment and to give the defaulting party seven days written notice of the application before a hearing where the defaulting party has appeared personally or through a representative. Fed. R. Civ. P. 55(b)(2). The Sixth Circuit has held that even where a defendant is in default, certain kinds of conduct amount to an informal appearance, entitling a defaulting defendant to notice under Rule 55(b)(2). *Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270 (6th Cir. 1981) (holding that a defaulting defendant's request for an extension to respond to the complaint constituted an informal appearance and demonstrated "sufficient evidence of their intent to respond to plaintiffs' claims"); *see also Citizens Bank v. Parnes*, 376 F. App'x 496 (6th Cir. 2010) (holding that informal requests for an extension of time, including an *ex parte* conversation with the presiding judge's case manager, constituted an informal appearance and entitled the defendant to notice under Rule 55(b)(2)).

The Court holds that the contacts between counsel for Plaintiffs and Mancilla and Cardenas qualify as an informal appearance, as the Sixth Circuit has considered the concept in *Lutomski* and *Parnes*. At the time of Plaintiffs' motion for default judgment, the parties had agreed to one extension of time for Defendants to file a responsive pleading and discussed the possibility of settlement. Plaintiffs had rejected Mancilla and Cardenas's first offer of settlement but also invited Defendants to make a second offer. Even though the parties'

agreed deadline for Defendants to file an answer had passed on May 22, Mancilla and Cardenas extended their second offer two days later. Counsel for Plaintiffs never responded to the second offer and instead pursued entry of default and the default judgments against Mancilla and Cardenas. The fact then that Mancilla and Cardenas had extended Plaintiffs a second offer, Plaintiffs had not responded to the second offer, Mancilla and Cardenas had attempted to locate counsel, and Mr. Cobb had left counsel for Plaintiffs a message, all before Plaintiffs moved for default judgment, suggest that counsel for Plaintiffs had a duty to give Mancilla and Cardenas reasonable notice of the motion for default judgment.[1] This course of dealing was enough to trigger the notice requirements under Rule 55(b)(2). The Court concludes then that Mancilla and Cardenas are entitled to relief from the default judgments for this independent reason as well.

Third, and simply as a matter of procedure, default judgment against Mancilla and Cardenas was premature until the Court could decide Plaintiffs' claims against EPA. In cases involving multiple defendants with joint liability or related theories of liability, the best case management practice is to delay entry of default judgment against an absent party until the trial court can determine the merits of the claims against the other defendants. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872). "When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants. If plaintiff loses on the merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants." *Exquisite Form Indus., Inc. v. Exquisite Fabrics of London*,

---

[1] *But see Parnes*, 376 F. App'x at 506 ("There is no notice requirement for the clerk's initial entry of default under Rule 55(a), so long as the failure to defend is demonstrated by 'affidavit or otherwise.'").

378 F. Supp. 403, 416 (S.D.N.Y. 1974); *see also* Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2690 (4th ed.). As already noted, Plaintiffs have not filed proof of service as to EPA, and Plaintiffs' claims against EPA remain. Until the Court has reached the merits of the remaining claims, default judgment against Mancilla and Cardenas is not warranted.

For all of these reasons, Mancilla and Cardenas's Motion is **GRANTED** as to the default judgments against them. The Clerk's orders granting Plaintiffs' motions for default judgment are hereby vacated.

**II. Setting Aside the Default**

The Court now turns to the issue of whether Mancilla and Cardenas have shown good cause for the Court to set aside the defaults against each of them. As previously noted, "the court may refuse to set aside a default, where the defaulting party has no meritorious defense, where the default is due to willfulness or bad faith, or where the defendant offers no excuse at all for the default." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194-95 (6th Cir. 1986). Concerning Defendants' fault, culpable conduct includes any "intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Childress*, 663 F.3d at 844. By contrast, "mere negligence or failure to act reasonably is not enough to sustain a default." *United States v. $22,050.00 in U.S. Currency*, 595 F.3d 318, 327 (6th Cir. 2010). If the defaulting party gives "a credible explanation for the delay that does not exhibit disregard for the judicial proceedings," then a court should typically set aside the default. *Shepard Claims Serv.*, 796 F.2d at 195.

Here Mancilla and Cardenas argue that they were attempting to negotiate a settlement with Plaintiffs and deny that they were attempting to thwart the orderly progress of the case. The Court would add that at the time they tendered their offers of settlement, Mancilla and

14

Cardenas were acting *pro se*, a factor for the Court to consider in its good cause determination for setting aside a default. *Childress*, 663 F.3d at 844 (citing *Shepard Claims Serv.*, 796 F.2d at 194). On the other hand, Plaintiffs had already agreed to give Mancilla and Cardenas until May 18 to make an offer of settlement and until May 22 to file a responsive pleading without seeking default. Mancilla and Cardenas missed the May 18 deadline to make their offer and allowed the May 22 deadline to pass with requesting any further extension. Between the summons itself and their agreement with Plaintiffs for an extension, Mancilla and Cardenas were clearly on notice of their need to file a responsive pleading. *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (considering how prior procedural steps in the case could have put the defaulting defendant on notice of its need to defend or file an answer).[2] And as in any case, *pro se* status is no excuse for ignorance of the Federal Rules of Civil Procedure. *McNeil v. United States*, 508 U.S. 106, 133 (1980) ("[S]trict adherence to the procedural requirements . . . is the best guarantee of evenhanded administration of the law.") (citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)).

The Court finds that Mancilla and Cardenas have not engaged in willful misconduct or acted in bad faith. While a reasonable *pro se* party should have taken steps to make a formal appearance before the Court and requested more time to file an answer, the Court cannot say that Mancilla and Cardenas showed reckless disregard for the proceedings. The parties were engaged in negotiations. At the time of the Clerk's entry of default, Defendants had extended

---

[2] It is likewise true that counsel for Plaintiffs served Mancilla and Cardenas with Plaintiffs' motions for entry of default by means of U.S. mail. However, the certificate of service shows that copies were placed in the mail to Defendants at addresses in California on Friday, May 26. Plaintiffs moved for default judgment the next business day, Tuesday, May 30. Under such a tight timeframe, Mancilla and Cardenas had no meaningful opportunity to have their defaults set aside before Plaintiffs had reduced the defaults to judgments.

a second settlement offer to Plaintiffs to which Plaintiffs had not yet responded.  Mancilla and Cardenas made the offer only two days after the parties' agreed deadline for Defendants to answer had passed and two days before Plaintiffs filed their motions for entry of default.  On these facts the Court finds that Mancilla and Cardenas may have acted unreasonably but not recklessly or with culpable intent.

With respect to possibly meritorious defenses, a meritorious defense raises "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *$22,050.00 in U.S. Currency*, 595 F.3d at 326 (quoting *Burrell*, 434 F.3d at 834).  The Sixth Circuit has held that a meritorious defense need only be "good at law" and present only "a hint of a suggestion which, proven at trial, would constitute a complete defense." *Id.* (citation and quotations omitted). Mancilla and Cardenas assert two possible defenses to the claims against them.  Defendants first argue that EPA was no longer a going concern at the time that EPA allegedly entered into the Rough Country contract and the Tecnico contract in 2015.  Defendants assert that another company Relmex, Inc. was actually doing business as EPA, or, as Defendants put it, using EPA as a "brand name."  Defendants also argue that the award of attorney's fees was improper because there was no illegal basis for an award of fees.

The Court holds that Mancilla and Cardenas have raised meritorious defenses to some of the claims against them.  The Court has already observed that the Complaint alleges the existence of a contract between Plaintiffs and EPA.  There is no allegation that Mancilla or Cardenas was a party to the contract. Privity of contract is an essential element of a claim for breach of contract under Tennessee law.  *Tipton v. Sparta Water Co.*, 57 S.W.2d 793, 795 (Tenn. 1933) (quoting *Longmeid v. Holliday*, 6 L. & Eq. Rep. (Eng.) 562); *see also Life Care*

*Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee law). As for attorney's fees, Tennessee generally follows the "American Rule" that a party may recover attorney's fees only if a statute or contract specifically provides for such an award or some other recognized exception to the American Rule applies. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 311 (Tenn. 2009) (citing *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985)); *Engstrom v. Mayfield*, 195 F. App'x 444, 451 (6th Cir. 2006) (applying Tennessee law). The Court concludes then that Mancilla and Cardenas have raised a "hint of a suggestion" that they have complete defenses to Plaintiffs' claims for breach of contract and prayer for attorney's fees. Therefore, this factor weighs in favor of setting aside each Defendant's default.

Finally, the Court must consider whether setting aside the defaults will prejudice Plaintiffs. In order to show prejudice, a plaintiff must show that a defendant's delay has resulted in one of the following: "loss of evidence, create[d] increased difficulties of discovery, or provide[d] greater opportunity for fraud and collusion." *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987). Standing alone, delay or the increased costs of litigation do not suffice to establish prejudice. *Childress*, 663 F.3d at 842. Mancilla and Cardenas state in somewhat conclusory fashion that "evidence is still in existence and the witnesses are still available." Plaintiffs question this claim in light of the fact that Defendants now assert EPA was no longer in business and that another party was simply using EPA as a "brand name." This possibility certainly gives the Court pause. However, there is no indication that Plaintiffs will find themselves in any position other than the one they occupied when they filed this suit and served Mancilla and Cardenas in the first

place. The Court has no reason to find that evidence or witnesses existing in April or May 2017 are no longer available now. Should it later come to light that relevant evidence is no longer in existence or material witnesses are no longer available, Plaintiffs will have an opportunity to file an appropriate motion.

Based on its consideration of all of the relevant factors, the Court concludes that Mancilla and Cardenas have shown good cause to set aside the defaults against them. Therefore, Defendants' Motion is **GRANTED** as to their request for relief from the entries of default.

## CONCLUSION

Defendants are entitled to revision of the default judgments and the setting aside of the entries of default as to each of them. Therefore, their Motion to Set Aside is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: August 9, 2017.